Good morning, Your Honors. Good morning. My name is Douglas Roller from St. Louis, Missouri, and I represent the Defendant Appellant, in this case, Frank C. Rousseau. One of my favorite cities. I love St. Louis. It's a great town, but so is San Francisco. And it's a pleasure to appear before the Ninth Circuit, as opposed, oftentimes, the Eighth Circuit. It's always nice to have a variety. This case appears on the briefs and appears in the factual support to be exceedingly complex. Or, I don't know about exceedingly, but complex. But if you understand what the factual underpinnings are, it is then a very easy step to support or to conclude, as we have, that the case should never have gone to the jury. The business involved was a third-party administrator. Quite simply, what they would do is administer a health care plan of an employer, self-funded. They would review the claims that would come in, compare them to the plan of benefits, determine what should be paid, advise the client, who would fund an account, and checks were then cut to pay the claims submitted by the employees. As long as you have the money coming in that's requested, the checks going out are covered. If there is a problem with the in process, then the out process becomes distorted or erroneous. In this case, a million dollars did not arrive in the account, although it was listed on the books as having been collected, did not arrive in the account from which the checks were made, not made, checks were run and paid to the claimants. Counsel, I thought the allegations in this case were that, was that money was being siphoned from one account, put into another account without the permission of the account holders, if you will. That are the, well, there's two sets of allegations. One are the 669 or embezzlement allegations, which really relate to what you're talking about. There were mail fraud allegations in connection with a client called Clark County. But yes, the answer to your question is that the accountant who should have been responsible for making sure that money to pay employer A's checks, that employer A's money was in the account, yes, he failed. And when he failed. Your argument is the accountant did it? Absolutely. Now, I understand that. I noticed the facial reaction there. But the fact of the matter is that's what the facts show. Here's, let me give you one example to show why there was no criminal intent, and then I'll get to why the charges were legally insufficient. First, the same situation that occurred in April or in May and June and July of 97 had occurred in the end of 96 into 97. That is, the funds were not being arrived and they're not coming in and checks are bouncing. Mr. Rousseau, who is the CEO, president of the company, multimillion dollar company, said to his accountant, his controller, what is the problem? We should not be short. The man had no answer. Well, what happens at the end of January? $1.6 million arrives in the bank account from outlying banks. You see, LMH, the company involved here, acquired other companies. They had a process whereby funds were put into outlying banks and then those banks would transfer them into the main bank in Fresno. That was not happening because the whole thing had not yet been converted. The $1.6 million comes in, everything's fine. It continues. So is your argument that the parties whose accounts were being administered weren't funding the accounts appropriately? No, they were funding the accounts. What was not happening, you see, I left out, and the confusion arises from a detail that I left out. The claims accounts, and this is lawful, the claims account had the money from a multitude of different clients. Co-mingled. Co-mingled. Okay. So unless you accounted for who put what in and what was going out for whom, you had no idea whose money was being brought in, whose money was going out. And that is the problem in this case. Now, it's a problem not only from a criminal intent point, because after that $1.6 million came in and the same thing occurred, started to occur later, my client told the controller, find out what the problem is. Why are we having a cash flow? Why are these holes in the accounts? For reasons unclear to me and for which the witness, who was immunized by the government and testified, had no explanation. He was the one, every morning, called the bank, determined where the funds were short, and instead of doing what had to be done with the seven accountants under his staff, he simply moved the money. Without any knowledge from your client? Absolutely, Judge. Even Mr. Hilton admitted that he called the first thing in the morning, that oftentimes he never talked to Frank Rousseau about it. And even after the fact, sometimes only told him generalized information. So now, in considering your argument, we have to look at the evidence in the light most favorable to the government. I understand that. Is your argument made with that in mind? Yes. Yes, it is. And here is why. The criminal intent aspect of the argument is more subject, I will acknowledge, to this, well, let's view it most favorably toward the government. And when you get that view, insufficient evidence claims are seldom overturned. I suggest to you in this case that there is absolutely no evidence. No reasonable jury could have found this, could have found criminal intent. You cannot in this case, Your Honor, you can't even rely upon the jury verdict. There were, and I should have memorized these numbers, the trial went on for two weeks. There were many witnesses, hundreds of pages of exhibits. We put on a case, four or five witnesses, the government had ten witnesses. The jury decided, with 21 counts, fraud, all these other things that go into a fairly complicated case, came back with a guilty verdict in an hour and 15 minutes. Now, of course, as a lawyer, I thought, well, what did I do wrong? But there's no way this evidence could have been realistically evaluated and come back by the jury in an hour and 15 minutes. Therefore, the trier of facts, deference to a trier of facts is not appropriate here. And I think you have to start from that viewpoint. But getting the mail fraud counts, there's even, this is where we get away from just the sufficiency of the evidence. In the mail fraud counts against Clark County, the government charged in their indictment a scheme and artifice to defraud whereby L&H, the company involved, would say to Employer A, okay, we have $15,000 worth of claims, fund your account for $15,000, and we'll pay the claims. According to the government, never intending to do that. Obviously, in order to solicit or obtain funds from somebody, you have to make some type of representation, some type of agreement, some type of falsehood in order to make out a fraud case. In Clark County, there wasn't even that. There was Clark County, when my client's company took over, in this account, which was an L&H account. It was not a Clark County account. L&H, they controlled it. It was not the county that had an agreement that only money that was supposed to pay claims were to come out of this account. Only Clark claims come out of this account. There was no agreement to that effect? The agreement was that this was the account. I mean, that was a misrepresentation, that every time you paid a claim with money, there  If you used Clark County money or you used Clark County money to pay something else, that was a false representation. By doing that, because you had an agreement with Clark County, that this money is in this account only for Clark claims. Two responses to that, Your Honor. Pardon? Please. Okay. One, first is that their own auditor, Clark County's own auditor, determined that this was not a trust account, which is what is envisioned by you. More importantly, however, the government witnesses for Clark County agreed that every penny of money put into that account by Clark County, while L&H had control of that account, went to pay claims. Not one penny, well, let me repeat that, not one penny that they put in there while my client ran the business was not used, every penny put in there, I should say, was used to pay the claims. Wasn't there? The money that, I'm sorry, Your Honor. Go ahead. Go ahead. The money that was in there, that is involved, was in there before my client ever took over. The predecessor never told Clark County about this money. Clark County never got the statements. Clark County had no control over the money. The only reason Clark County ever found out about the money was because some misguided employee got upset because the money was transferred from one L&H account to an L&H interest-bearing account and told Clark County. Our people told Clark County. My client not only went up there, not only gave the money back, but changed the signature cards so that Clark County had control. Now, that's not criminal intent, and that is not wire fraud, because there was no representation. I'm not talking about no specific representation, which is what the government focuses on. I'm talking about no generalized misrepresentation, no scheme to utilize a particular pattern of misrepresentation to obtain the money. But wasn't the money from the Clark County account moved out of the designated Clark County account and moved somewhere else? It was moved from an account in Las Vegas controlled by L&H to an account in Fresno. The central bank, in the central bank. In the central bank, in Fresno, in an interest-bearing account. The one in Las Vegas was not. It was still controlled by L&H. To be used for what? To be used for what? Whatever. To sit there for the same thing it had been doing for years beforehand. That money had been sitting there for years. It wasn't used to pay claims. Am I confused, or did you just say that the money that had been the Clark County account was always used to pay Clark County claims. Correct. But that they started putting Clark County money somewhere else in another account and did use some other purpose for that money. Is that what you just said? That's not the way it sounded to me, but let me make sure. It's more important of how it sounded to you, of course. So let me reiterate, if I may. While L&H controlled the account, none of the money that went into the Clark County employee's L&H account in Las Vegas was transferred out. It stayed there. In this particular instance, the funds were written off of there. This was the exception. All the funds that Clark County put in were paid out. The money at issue, Your Honor, was in the account, was sitting in the account before my client ever assumed control. It was excess funds that were in there. But it was Clark County's excess funds. It was designated. How do we know? How was it designated? Was it designated as Clark County money? No. So it had no designation on it at all? It was not even a trust account. No, I don't mean. How was the money identified? How was it identified? Every account has a name on it. It was in a bank, right? This was CoreSource Clark County employee's fund account. It was CoreSource was a predecessor company, excuse me. It was CoreSource's account. That was their signature cards. They got the statements. They had control over the funds. But how did people identify it as Clark County's money, then, if Clark County was? That's the problem, Your Honor, because here's what happened before my client took over the business. Every single night, the predecessor company swept all their accounts, including their account in Clark County, into Harris Bank in Chicago overnight. Why? To gain some interest. Then the next day, the money was transferred back out and funded. And we proved at trial that there were mistakes made by CoreSource in refunding the accounts. So to say it's Clark County money is not true. Well, why was it paid back to Clark County, then, if it weren't Clark County's money? Because they asserted control. Excuse me. I'm very sorry for interrupting you, Your Honor. That's okay. Because they asserted control, and they said, that was our money from years ago. My client couldn't disprove it. So he said, okay, we'll give it back to you. And the whole process here was 30 days, 30 days. But that's not the issue. The issue was their fraud in procuring that money. And there wasn't, because that money was not part of the process of obtaining funds to pay accounts. Now, on the other cases, the Kinkos and Clark County, those were commingled accounts, as Your Honor pointed out. This is where the million dollars sitting out there, another separate million dollars. Is it Kinkos and Clark County? And Warts. Oh, Kinkos and Warts. That's what you're talking about. Warts and Kinkos, not Clark County. We've got to put Clark County aside now. Right. Just Kinkos and Warts. That's where there were two separate accounts. But particularly emphasizing Kinkos, there was a multitude, and this was admitted, Mr. Mesh is an honorable, outstanding professional, will tell you, yes, they were commingled. He may say they tried to cough Kinkos, but even their auditor said these accounts were commingled. How can my client be accused of embezzling Kinkos money when it is simply a matter of not whether or not there was money there, but where the money was? There wasn't anything, no criminal intent to embezzle, and the government cannot prove that the money taken out of those accounts was Kinkos money. Wasn't there a testimony at trial from some of the employees for those two companies that accounts had zero balances when there should have been money in there and the money was moved out? There wasn't testimony to that effect at trial? If they had charged, they being the government, had charged L&H, not my client, L&H, with occasional insufficient funds, yeah, there were occasions when the account was overdrawn. Why? Because Client A's claims were paid, but Client A's money had not gotten in there. There was no control in place. My client ---- Even though Client A had paid the money, the money hadn't gotten into the account. Is that your argument? Exactly. Exactly. Are you telling us that Mr. Rousseau did not know that his operating money payments were made out of this commingle account? He didn't know that he was operating L&H, paying their bills, operating bills out of that commingle? Is that the way the money was handled and he didn't know that? It's like a CEO and a chief financial. This was a multimillion-dollar company. They ran millions of dollars through their claims payment. They had hundreds of employees across the country. He was the marketing merger guy. But even though it's a million-dollar company, doesn't the buck stop at the head of the company? For civil litigation, you're absolutely correct. For a criminal indictment and send the man to jail, no. I see my time is up. I'm running into my rebuttal time. Thank you very much. All right. Thank you. Good morning, Your Honors. My name is Richard Mesh. I'm an assistant United States attorney. I'm presenting the government's argument in regard to this case. Did you try this case? I was the trial attorney, Your Honor. First, let me start off by saying since the briefing of this matter, Ameline 3 has come down. And on the basis of that authority, the government will concede that this is a matter that would need to be remanded for the limited purpose of the determination by Judge Strand as to whether or not the fact that the sentencing guidelines are now advisory would have changed his sentence in this matter. Having said that, let me also add that this morning I provided your clerk a correction for the record of a citation on page 49 that admirably was discovered by my adversary and noted in his brief. I direct your attention to page 49. The error is the citation to Weissman. It should have read Walker, and that's to be found at 234 Fed 3rd, 780. It's a First Circuit case from 2000, and Walker does stand for the exact proposition that appears in the brief. The error, unfortunately, I have to take responsibility for that, was in scribbling down Walker v. Weissman and attributing the improper citation and name of the case. But otherwise, the authority is the same. I think the issue to be determined today are the substantive issues that were raised by the defendant on his appeal, matters that need to be decided by you, and I would urge you to do that, or I should say, and secondly, are the sentencing issues matters that you wish to provide instruction to the sentencing court rather than have the matter returned to him and then have it returned here with the same arguments being presented at a later time. I would urge you to provide Judge Strand with the benefit of your wisdom concerning the issues that are being presented today. Specifically, the government in its cross-appeal indicated that the judge had committed error in regard to failing to apply three enhancements, those being more than minimal planning, role in the offense, and then a two-point downward departure. My brief explains the reasons on each one of those. But let me first turn to the substantive issues that Mr. Roller has presented to you. First, the issue of Clark County and the million dollars in that account. The defense would have you believe that the million dollars was a static sum of money sitting there without any designation as to who put the money there. You need only to examine the testimony of Margaret Steele, who was the funding account person for that, when the discrepancy presented itself in the trial testified that she went back and did an analysis and was able to determine that in the course of the years, Clark County, with thousands of employees, millions of dollars being paid out of their health care program, while it was with the predecessor company, that being CoreSource, had canceled checks, stopped payments, that is, or other accounting issues had arisen that had brought about an accumulation of about a million dollars in that account. So the deposits for payment from this claims-paying account for employee health care benefits had been placed there for that purpose, but was not expended because the stop payments on the checks. Stop payments because in some cases there had been two checks written on the same claim. Other times there was a reversal in opinion as to whether the claim should be paid. And what was that fund to be used for? What was that money for? It was used to be used exclusively to pay the health care claims of Clark County. So every dollar that was in that account were the funds of Clark County having been put there, if you will, in trust, although the account didn't say trust. They had been forwarded to either CoreSource and subsequently the L&H administrators with the express understanding that this money would be used to pay the claims of the accounts that need to be paid, checks that need to be funded for employees who had had health care. And once the company, the county of course, received that register, it wrote a check in hundreds of thousands of dollars on almost a daily basis to be put in this account to cover the checks that as soon as the money hit the account, the mailroom would then mail out the checks. The checks then would go to the providers, the providers cashed the checks, the money comes out of the account. And it's on the basis of that that they refer to these accounts as a zero payment account. But didn't opposing counsel say this money had been sitting there and had not been used to pay accounts? When you say sitting there, what you're really referring to, Your Honor, is an accumulation of the money over a period of time. There had been an oversight on the part of the corporation or the county to take back the monies that had been deposited there. And through that oversight, the money just sat there. It was not refunded to them. Counsel's argument is that since the money was already there, we could steal that money. And when we stole the money, there was no misrepresentation made. And since there was no misrepresentation made, it can't be a wire theft. Let me explain to you why that's mistaken. Number one, if you read Mr. Hilton's testimony, and that's contained in our supplemental excerpt of record, a rather lengthy explanation as to how the scheme came into existence, there was a cash fund flow problem in the early part of 1977, actually, 96 to 97. And at a meeting sometime prior to July 7th, January 7th, a date that Mr. Hilton, with the passage of five years, couldn't exactly remember, the defendant held a meeting with his corporate controller, his executive vice president. And at this meeting that Mr. Hilton says the defendant was the leader of the meeting, he concocted a scheme to use the funds from these claims accounts to cover the corporate expenses, albeit on a short-term basis, kind of bridge loans, to help us stay afloat, stay alive. And when the money was to be taken out of the account, of course, it was to be put back as quickly as possible from other sources. So it was the float that exists for a short period of time between the funding of the account and the time the checks are issued and submitted that the corporation would use that money to pay salaries, corporate expenses, et cetera. Uses that were not for the intended purpose, paying the claims. Every one of those withdrawals for a purpose of paying a corporate expense is a misrepresentation. The misrepresentation of the account register. The misrepresentation of the account register. And remember, for embezzlement, it's not a permanent deprivation. A limited one, short-term basis will do. The defendant was, at that point, misrepresenting to the defendants, to the victims, what his intention was with the money. And so the defense would have you believe that because there's a million dollars there, it's static. But that's not the case. Every day, thousands, hundreds of thousands of dollars are being put in there. The same dollars, if you will, by serial number, do no longer exist in that account in March when they first start dipping into the account, as existed in January. And as a result, it's a commingling of the monies into this claims-paying account from accumulated money and new money from which they are embezzling funds. Excuse me, Your Honor. Was the commingling charged in the indictment as an overt act that was part of the fraud? No, Your Honor. No, it was not. I mean, Wells Fargo probably has 40 million different accounts. And when I write a check to pay my dentist or something, I may be getting money that was put in there by Wells Fargo by somebody else. What's fraudulent about it? Okay. And what is fraudulent about that is when you read Mr. Hilton's testimony, what was the nature of the scheme? And number one, the nature of the scheme, according to Mr. Hilton, was to use whatever money was in whatever claims accounts were available to the corporation to testify that he was told to plug the holes. Plug the holes. That's correct. And that happens when a lawyer commingles money in his trust account, and then uses it to plug holes and make bridge loans and whatever. Once he exercises dominion and control and treats it as his own money, then he's committed a violation, whether – but it isn't mail fraud or wire fraud, because he just does that in-house. That's just old garden variety embezzlement. That's correct, Your Honor. But now here, what was the misrepresentation that was sent over the wire? I remember I tried a wire – a mail fraud case one time in which millions of dollars were sucked out of an insurance company, but it was all done by hand-carried messages. So I had to instruct the jury that unless the government proved that mail was used to suck this money out of the insurance company, they couldn't convict. So they turned these guys loose because they hand-carried everything. Now, what was the wire misrepresentation that constitutes this crime? The wire was merely to execute. It was just executing a transfer, wasn't it? No. The wire was executing a transfer. The misrepresentation was as to the purpose of the monies that were being received into the account. It's two steps. Was that purpose represented each time? Wasn't it kind of a standing order or something? Clark County had a lot of money that was sitting around that they – that the Hilton dipped into it to pay off other claims, and then theoretically would put the money back in Clark County's account sometime. That's right. They did exercise some dominion and control over Clark County's money while they were using it for some other purpose. But if it was just an in-house bookkeeping entry, what was the wire fraud? The wire fraud is a two-step operation here, Judge. First, there needs to be a deposit of the money into the account from which the monies will now be withdrawn by wire. So if you will, the wire is being used to execute the fraudulent scheme. The deposit of the monies come about by the register that says send us money that we're going to put into this account and pay your claims. What is the register? I guess that's what we're not understanding. The register is the list of the accounts that have been received today or within a short period of time, listing party. Mr. Jones has a $25 bill. Mr. Smith has a $50 bill. Mr. X has a $100 bill. Send us $175, and we'll pay these three bills for you. And that's sent where? Sent by L&H to Clark County for the purpose of receiving the funds from Clark County to put into the Clark County account that's being administered by L&H, upon which the checks are written and then sent to the provider of the service. Are you alleging that those registers were false in any way? No, they're not false. So how is that part of the false representation? The false representation is that they know when they send them that list, they're going to use the money to cover corporate expenses. And when the money is then received, now a wire is used to execute the fraud to get the money out of the account. Corporate expenses as opposed to for payment of benefits. That's correct, Your Honor. So that is the fraudulent scheme and the execution of that scheme. The backside of that is the embezzlement of those funds. Every withdrawal from the Clark County account, and if you'll take a look in the supplemental exhibit, is Exhibit 110 at trial, which lists the dates and the withdrawals of the money from the account going into the money market account. Mr. Hilton testified that was just a cover story, putting it in an interest-bearing account, and when it hit that account, within two days, out of the $800,000 that were placed into the interest-bearing money market account, 600,000 of that was withdrawn by Hilton and could be traced into L&H corporate accounts to pay payroll, operating expenses, and to fund other accounts that had been used to maintain corporate operations, something called a flex account. All of those were embezzlements. When you take a look at not only the withdrawal of the monies, what you will see is that Hilton put money back into that account. Why would Hilton put money back into the account if every dollar that was received by them went to pay claims? And the suggestion is that money was needed back in the account to pay, after they withdrew the $800,000, to pay ordinary claims. So he had to get some money back in there, and you'll see he put back 300,000. He put back 100,000. After he did that, then he took another 200,000 and 300,000. There is now a net of 800,000 still withdrawn from the Clark County account when one of the L&H employees uncovers in doing the monthly reconciliation the withdrawal by wires. Something is wrong, that employee says, because you can't withdraw from a check-paying account only by wire and inquires of Clark County, what's going on there? Why did you guys withdraw this money from this account by wire? And Clark County says, we didn't do that. That starts an investigation about the 24th of April. And by the 28th or 29th, they're sitting on the phone with Mr. Russo saying we have to have a meeting. On the 30th, they have a meeting, and on the 1st of May, $800,000 goes into the Clark County account. And the money is being used to cover the losses that they had stolen from the first account. So it's this shell game of moving the money back and forth, not intending that anybody should suffer a financial harm. Mr. Hilton mistakenly equates the abs his intent to just move the money to cover positions. He says we're trying to protect everybody's position. Sure they are. They don't intend for anybody to suffer a loss. We have all these balls up in the air, and we're good jugglers, and we can keep going until we have a moment's breather, and then we can stop and all the accounts will be funded. The problem was that never happened. And there came a day when there just wasn't enough money in the accounts to be moved around, and that's when the house of cards started to collapse. Counsel, what's your response to opposing counsel's argument that the accountant was at fault in all of this, and Mr. Rousseau knew nothing about what was going on? When you read Mr. Hilton's testimony, he will say, number one, I never would have moved the money but for the fact that Rousseau told me to do it. Number two, I had no background in the insurance business. I didn't know the difference between claims money being trust account money until I was informed that by other people. And when I was informed that, I realized the error I had made, and I went to Mr. Rousseau and I said, I quit. What we're doing is wrong. And Mr. Rousseau convinced me sometime in May to stay, help me turn around the company. And so he stayed at this point, Mr. Hilton, knowing that he's moving money in violation of his sacred trust. Notwithstanding that, he is giving monthly, excuse me, daily accountings to Mr. Rousseau as to how I'm moving the money. It's absolutely correct, as counsel points out. Mr. Rousseau didn't know in advance. But that's the ministerial execution of the general plan. That's what bosses do. They tell people, here's the overall plan. You go and do it. And report back to me when it's done. If you have a trusted employee, that's how he operates. And that's exactly what Hilton did until Hilton couldn't do it anymore and quit. At that point, the defendant started to call the bank. And the defendant himself started to fill out these withdrawal slips from the Kinko's account and the Wart's account that showed his withdrawal and embezzlements of money. Let me just say in the remaining time, Your Honor, there is a point made that it wasn't Kinko's money. Take a look, if you will, at the withdrawals as they exist in the exhibits that we've provided to you in the supplemental exhibits. And what you will see is all the withdrawals was more than the deposits of the other people into those accounts. In other words, only $15,000 was deposited by the company into the Kinko's accounts. Kinko's had been originally a account solely for the purpose of taking care of Kinko's. The defendant commingled the money. But even with the commingling, the amounts that were withdrawn from that account exceeded the amount that was put in by all the other people. That's embezzlement of Kinko's money. The same applied for the Wart's account. I see my time is up. Thank you very much for your attention. In the minute and a half I have left, let me just say a couple things. Mr. Mesh is a very good attorney. He's very good at doing the broad brush strokes and saying this is what the conclusion is. And the problem is, in this case, you cannot do that. And I think Your Honor pointed out, where is the misrepresentation? When Mr. Mesh described, send in the money, put it into accounts, and we'll pay your fees, that was a misrepresentation. Pay your claims, Your Honor. Well, that was done. That was done. Now, so that is a misrepresentation. There was no wire carrying out the misrepresentation, no wire transfer. And all the wire fraud cases have to go. I would ask, I also would ask you to read Mr. Hilton's testimony. Mr. You can take Mr. Hilton's testimony. I can tell you he said we never intended to commit fraud. Frank never told me to make those transfers. I didn't always tell Frank. A lot of times he didn't know. I assumed this is what he wanted me to do. And then you can take the quotes that Mr. Mesh just told you about. They're all there. What about his representation that after Mr. Hilton quit, Mr. Rousseau commenced to making the withdrawals himself of the transfer? There was one or two, one to make payroll. Kinkles took over the general claims account in July and had control of it. Mr. Rousseau couldn't do that. The fact of the matter is only when Hilton was there was this done. The entire case of the government depends upon the conclusion, beyond a reasonable doubt, that Mr. Rousseau told Hilton to do this on a daily basis because it was only by doing that when the funds weren't coming in that there were the shortages. One last thing. Exhibits 153 and 154 in our appendix reflect that all the money going into these accounts, both the general claims account and the Memphis account, with what goes out is compared in the 3550 account, the so-called Kinkles account, there's only a $48,000 difference. In the Memphis account, there's only a $17,000 difference. That's why the government's theory does not wash. Finally, on Ameline. I'm sorry. I'm sorry. Go ahead. Make the final point. On Ameline, I think what has to be or maybe I'm mispronouncing. Excuse me. You're fine. I'm from St. Louis and I don't know how to pronounce these Western names, but Ameline. In this case, I don't think the process outlined in Ameline is sufficient because, as we argued in our brief, the judge did not make any findings as to loss. He simply said, well, I rely on the probation department report. And as we pointed out, that is insufficient. So that has to be reviewed also. So I think in this instance, there has to be a total resentencing opening up in the very beginning. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for a decision by the court. And the final case on calendar for argument today is United States v. Coleman.
judges: Goodwin, Reavley , Rawlinson